## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 24-20367-CR-BLOOM(s)
18 U.S.C. § 1956(h)
18 U.S.C. § 1956(a)(1)(B)(i)
18 U.S.C. § 1957
18 U.S.C. § 1960
18 U.S.C. § 2
18 U.S.C. § 982(a)(1)

FILED BY _____ mp _____ D.C.

Nov 19, 2024

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Miami

**UNITED STATES OF AMERICA**

**v.**

**NILSON SNEYDER VASQUEZ DUARTE,**
     **a/k/a, "SOBRI," a/k/a, "SOBRINO,"**
**MARIA EUGENIA LANDEROS ROSAS,**
     **a/k/a, "YENI,"**
**RAIMUNDO CARLOS RODRIGUEZ HUTER,**
**JUAN CARLOS RIANO MUENTES,**
**JESUS IVAN RINCON MARTINEZ,**
**MAYCCOL HEJEILE MORALES,**
**HERNAN JULIAN CALVO BUENO,**
**SERGIO FERNANDO VARGAS ALVAREZ, and**
**HERNAN HORACIO RICHARD SAMPER,**

                    **Defendants**.
_____/

### SUPERSEDING INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times material to this Indictment:

#### Introduction

1.     The defendants participated in a sophisticated international illegal money

laundering conspiracy that facilitated the transfer of cash proceeds from illegal drug sales in the

United States to leaders of drug trafficking organizations in Mexico. The drug trafficking organizations are hereinafter referred to as "Cartels."

2.      The Cartels were responsible for the importation into the United States of large quantities of heroin, fentanyl, cocaine, and methamphetamine. The Cartels distributed these illegal drugs throughout the United States, including in Alabama, Connecticut, Louisiana, Georgia, Illinois, New York, and North Carolina.

3.      The distribution and sale of the illegal drugs generated large quantities of cash proceeds in the above-listed locations and elsewhere in the United States.

4.      The Cartels solicited individuals to organize pickups of the cash proceeds from the sale of illegal drugs throughout the United States, to convert the cash into cryptocurrency, and to sell the cryptocurrency for cash in Mexico and Colombia for delivery of the illegal drug proceeds back to the leaders of the Cartels.

5.      Cryptocurrency is a decentralized digital currency that can be bought, sold, and exchanged directly without an intermediary bank. Cryptocurrency is transferred between "wallets," which are software applications on computers or mobile devices such as phones or tablets. Cryptocurrency wallets can be accessed by two passkeys (passwords), which are called a private key and a public key. The transfer of cryptocurrency from wallet to wallet is tracked by a "blockchain," which can be viewed by anyone on the Internet. While a transfer from wallet to wallet is public, the contents of the wallet and the identity of the wallet holder is not, providing anonymity to cryptocurrency transactions.

6.      Many people buy cryptocurrency via exchanges. Exchanges allow an individual to buy, sell, and hold cryptocurrency. Setting up a cryptocurrency exchange account is similar to opening a brokerage account. Under U.S. law, an individual buying cryptocurrency from a

cryptocurrency exchange will need to verify his or her identity and provide a funding source, such as a bank account or credit card.

7.      Persons engaging in illegal activities, such as drug trafficking, do not want to purchase cryptocurrency directly from a cryptocurrency exchange governed by U.S. law, as they would have to disclose their identities and provide financial information.  Instead, they find an individual who, for a fee from 2% to 8% or more, will accept cash and convert it into cryptocurrency without these disclosures (hereinafter referred to as a "Black Market Cryptocurrency Broker").  A Black Market Cryptocurrency Broker generally is a person who can transfer large sums of cryptocurrency without drawing scrutiny from U.S. law enforcement or regulators.

8.      Cryptocurrency transactions are capable of crossing domestic and international borders without the need to engage in the risky business of moving physical money from one location to another.  Plus, these transactions provide a degree of anonymity in that cryptocurrency wallets do not need to be registered in an individual's name.  In this manner, criminals, such as the defendants identified below, take advantage of cryptocurrency to conceal and disguise the nature, source, ownership, and control of illegal proceeds.

9.      Black Market Cryptocurrency Brokers engage in "money transmitting," which is defined under Title 18, United States Code, Section 1960(b)(2) to include transferring funds on behalf of the public by any and all means, including, but not limited to, transfers within this country or to locations abroad by wire, check, draft, facsimile, or courier.

10.     Pursuant to Title 18, United States Code, Section 1960(b)(1)(A), money transmitting businesses which affect interstate or foreign commerce in any manner or degree must possess an appropriate money transmitting license from the State in which they operate.

11.     Money transmitters in the State of Florida were required to register under Florida law, and operating a money transmitting business without authorization is punishable as a felony under Florida law.

12.     At no time relevant to this Indictment did any of the defendants register with the State of Florida or obtain a license from the State of Florida to operate a money transmitting business.

### Relevant Individuals and Entities

13.     "Co-conspirator 1" was a Mexican national who facilitated the conversion of cash proceeds from the sale of illegal drug sales in the United States into cryptocurrency in order to transfer the illicit proceeds back to the leaders of the Cartels in Mexico.

14.     "Co-conspirator 2" was Colombian national and U.S. resident who was a cash courier that picked up and transported cash proceeds from the sale of illegal drugs to Black Market Cryptocurrency Brokers for conversion into cryptocurrency and subsequent transfer to a designated wallet.

15.     "Co-conspirator 3" was a Colombian national and U.S. resident who was a cash courier that picked up and transported cash proceeds from the sale of illegal drugs to Black Market Cryptocurrency Brokers for conversion into cryptocurrency and subsequent transfer to a designated wallet.

16.     The "UCA" was an undercover law enforcement agent who portrayed himself to Co-conspirator 1, among others, to be a South Florida-based Black Market Cryptocurrency Broker capable of laundering drug proceeds in various cities by picking up the cash and converting it into cryptocurrency.   For a percentage fee, the UCA transferred the converted drug proceeds to cryptocurrency wallets designated by Co-conspirator 1.

4

17.     The "undercover agent(s)" were other undercover law enforcement agents, aside from the UCA, who also posed as Black Market Cryptocurrency Brokers or their associates.

**The Defendants**

18.     Defendant **NILSON SNEYDER VASQUEZ DUARTE, a/k/a, "Sobri," a/k/a, "Sobrino,"** (hereinafter referred to as "**DUARTE**") was a Colombian national who solicited and directed others to pick up cash proceeds from illegal drug sales in various U.S. cities and transport those proceeds to Black Market Cryptocurrency Brokers, who would, for a percentage fee, convert the cash into cryptocurrency.

19.     Defendant **RAIMUNDO CARLOS RODRIGUEZ HUTER** (hereinafter referred to as "**HUTER**") was a Mexican national who solicited and directed others to pick up cash proceeds from illegal drug sales in various U.S. cities and transport those proceeds to Black Market Cryptocurrency Brokers, who would, for a percentage fee, convert the cash into cryptocurrency. Defendant **HUTER** also at times operated as a Black Market Cryptocurrency Broker converting cash from illegal drug sales into cryptocurrency.

20.     Defendant **JUAN CARLOS RIANO MUENTES** (hereinafter referred to as "**RIANO**") was a Colombian national and U.S. resident who organized cash couriers to pick up and deliver cash proceeds from the sale of illegal drugs and transport those proceeds to Black Market Cryptocurrency Brokers for conversion into cryptocurrency and subsequent transfer to a designated wallet.  On occasion, defendant **RIANO** also acted as a cash courier.  Defendant **RIANO** introduced Co-conspirator 1 to defendant **DUARTE**, as well as defendants **MAYCCOL HEJEILE MORALES**, **HERNAN JULIAN CALVO BUENO**, and **JESUS IVAN RINCON MARTINEZ**.

21.     Defendant **MAYCCOL HEJEILE MORALES** (hereinafter referred to as "**MORALES**") was a Colombian national and U.S. resident who was a cash courier that picked up and transported cash proceeds from the sale of illegal drugs to Black Market Cryptocurrency Brokers, including the UCA, for conversion into cryptocurrency and subsequent transfer to a designated wallet.   Defendant **MORALES** also at times operated as a Black Market Cryptocurrency Broker converting cash from illegal drug sales into cryptocurrency.

22.     Defendant **HERNAN JULIAN CALVO BUENO** (hereinafter referred to as "**CALVO BUENO**") was a Colombian national and U.S. resident who was a cash courier that picked up and transported cash proceeds from the sale of illegal drugs to Black Market Cryptocurrency Brokers, including the UCA, for conversion into cryptocurrency and subsequent transfer to a designated wallet.   Defendant **CALVO BUENO** also at times operated as a Black Market Cryptocurrency Broker converting cash from illegal drug sales into cryptocurrency.

23.     Defendant **JESUS IVAN RINCON MARTINEZ** (hereinafter referred to as "**RINCON**") was a Colombian national and U.S. resident who was a cash courier that picked up and transported cash proceeds from the sale of illegal drugs to Black Market Cryptocurrency Brokers for conversion into cryptocurrency and subsequent transfer to a designated wallet.

24.     Defendant **SERGIO FERNANDEZ VARGAS ALVAREZ** (hereinafter referred to as "**ALVAREZ**") was a Colombian national and U.S. resident who was a cash courier that picked up and transported cash proceeds from the sale of illegal drugs to Black Market Cryptocurrency Brokers for conversion into cryptocurrency and subsequent transfer to a designated wallet.

25.     Defendant **HERNAN HORACIO RICHARD SAMPER** (hereinafter referred to as "**SAMPER**") was an Argentinian national and Mexican resident who was a Black Market

6

Cryptocurrency Broker that, for a percentage fee, exchanged cash proceeds from illegal drug sales into cryptocurrency.

26.    Defendant **MARIA EUGENIA LANDEROS ROSAS, a/k/a "Yeni,"** (hereinafter referred to as **"LANDEROS"**) was a Mexican national who was a Black Market Cryptocurrency Broker that, for a percentage fee, exchanged cryptocurrency from illegal drug sales for cash in Mexico for the benefit of the Cartels in Mexico.

## COUNT 1
### Conspiracy to Commit Money Laundering
### (18 U.S.C. § 1956(h))

1.    Paragraphs 1 through 26 of the General Allegations of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.    From at least in or around 2020, continuing through at least in or around May 2023, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants,

**NILSON SNEYDER VASQUEZ DUARTE,**
**a/k/a, "Sobri," a/k/a, "Sobrino,"**
**MARIA EUGENIA LANDEROS ROSAS,**
**a/k/a, "Yeni,"**
**RAIMUNDO CARLOS RODRIGUEZ HUTER,**
**JUAN CARLOS RIANO MUENTES,**
**JESUS IVAN RINCON MARTINEZ,**
**MAYCCOL HEJEILE MORALES,**
**HERNAN JULIAN CALVO BUENO,**
**SERGIO FERNANDO VARGAS ALVAREZ, and**
**HERNAN HORACIO RICHARD SAMPER,**

did knowingly and voluntarily combine, conspire, confederate, and agree with each other and with other persons known and unknown to the Grand Jury to commit offenses in violation of Title 18, United States Code, Sections 1956 and 1957, to wit:

(a)     to knowingly conduct, and attempt to conduct, financial transactions, affecting interstate and foreign commerce, which transaction involved the proceeds of specified unlawful activity, and knowing that the money and property involved in the transaction were the proceeds of some kind of unlawful activity, and knowing that the transaction was designed, in whole and in part, to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i);

(b)     to knowingly conduct, and attempt to conduct, financial transactions, affecting interstate and foreign commerce, which transaction involved the proceeds of specified unlawful activity, and knowing that the money and property involved in the transaction were the proceeds of some kind of unlawful activity, with the intent to promote the carrying on of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i); and

(c)     to knowingly engage, and attempt to engage, in monetary transactions by, through and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity, and knowing that the transaction involved property and funds that were the proceeds of some criminal activity, in violation of Title 18, United States Code, Section 1957.

3.      It is further alleged that the specified unlawful activity referred to above includes:

(a)     possession with the intent to distribute controlled substances and conspiracy to do so, in violation of Title 21, United States Code, Sections 841 and 846;

(b)     unlawful importation of controlled substances into the United States and conspiracy to do so, in violation of Title 21, United States Code, Sections 952 and 963; and

(c)     operation of an unlicensed money transmitting business, in violation of Title 18, United States Code, Section 1960.

8

**Purpose of the Conspiracy**

4.      It was the purpose of the conspiracy for the defendants and their co-conspirators to unjustly enrich themselves by receiving a fee for laundering cash from illegal drug sales in the United States, converting those cash proceeds into cryptocurrency, and then exchanging that cryptocurrency back into cash in Mexico and elsewhere to pay Cartel leaders for illegal drug sales in the United States.

**Manner and Means of the Conspiracy**

The manner and means by which the defendants and their co-conspirators sought to accomplish the purpose of the conspiracy included, among others, the following, while in the Southern District of Florida and elsewhere:

5.      Co-conspirator 1, defendant **DUARTE**, and defendant **HUTER** negotiated and reached agreements with Cartel leaders in Mexico to launder cash proceeds from illegal drug sales in the United States back to the Cartel leaders in Mexico.

6.      Co-conspirator 1, defendant **DUARTE**, and defendant **HUTER** arranged for couriers to pick up cash proceeds of illegal drug sales, to deliver the cash proceeds to Black Market Cryptocurrency Brokers to buy cryptocurrency with cash in the United States, and to sell the cryptocurrency for cash in Mexico and elsewhere.

7.      Co-conspirator 1 arranged, directly or indirectly, for couriers, including defendants **MORALES, CALVO BUENO, RIANO, RINCON, ALVAREZ,** and Co-conspirator 3 (together, the "Co-conspirator Couriers") to pick up cash from illegal drug sales at locations throughout the United States provided by Cartel leaders.  The Co-conspirator Couriers typically transported cash in amounts ranging from approximately $50,000 to approximately $500,000,

often in used bills in denominations of $10, $20 or $100 that were bound by rubber bands and placed inside of plastic bags or boxes.

8.      In order to convert the cash proceeds from illegal drug sales to cryptocurrency, Co-conspirator Couriers would transport the cash in vehicles to the Southern District of Florida, as well as other locations.  As part of the conspiracy, the couriers received a fee of approximately 2% to 5% for transporting the cash.

9.      The Co-conspirator Couriers would take steps to evade scrutiny from law enforcement.  Such activity included, among other things, quickly making exchanges in an area of a parking lot with few, if any, people around, keeping the cash in concealed "trap" compartments of the transporting vehicle, and not personally identifying themselves during exchanges.

10.      During the cash exchanges, the co-conspirators would circulate a picture of a one-dollar bill and the serial number contained on that bill.  The picture of the one-dollar bill was referred to as a "token."  The Co-conspirator Couriers, upon collecting the drug proceeds, would compare the picture of the dollar to the actual dollar bill in order to confirm the identity of the parties.

11.      The co-conspirators understood that the true identities of all co-conspirators were not disclosed to the entire conspiracy, but all were engaged in activities to further the conspiracy.  Only co-conspirators who were trusted would be permitted to obtain, transport, and deliver cash proceeds from illegal drug sales.

12.      Co-conspirator 1 and defendant **DUARTE** contacted Black Market Cryptocurrency Brokers, including the UCA acting in the undercover capacity as an international money launderer, and defendants **HUTER, LANDEROS, MORALES, CALVO BUENO,** and **SAMPER** (together, the "Co-conspirator Cryptocurrency Brokers"), to arrange for the purchase of

cryptocurrency in the United States using illicit cash drug proceeds and for the sale of the cryptocurrency for cash in Mexico and elsewhere.

13.     The Co-conspirator Cryptocurrency Brokers would receive the cash proceeds from illegal drug sales from the Co-conspirator Couriers in the Southern District of Florida, as well as other locations.   The Co-conspirator Cryptocurrency Brokers typically charged a fee of approximately 2% to 7% for converting the cash into cryptocurrency.  The Co-Conspirator couriers would typically wait for confirmation of the cryptocurrency transfer before relinquishing the cash to the Co-conspirator Cryptocurrency Brokers.

14.     The Co-conspirator Cryptocurrency Brokers would then arrange to exchange this cryptocurrency for cash for delivery in Colombia and Mexico for the benefit of the Cartels.

15.     In instances when law enforcement seized the cash, Mexico-based Cartel leaders would demand that their launderers, including the couriers involved in the transportation of the cash, provide proof of the seizure.  Cartel leaders would at times demand repayment of the seized cash.

16.     On or about September 9, 2020, defendant **RIANO** delivered approximately $51,500 in cash from the sale of illegal drugs in Davie, Florida to a confidential informant assisting law enforcement (hereinafter referred to as the "CI") to be exchanged for cryptocurrency on behalf of Co-conspirator 1.

17.     On or about September 25, 2020, defendant **RINCON**, after making cash pickups in Chicago, Illinois and Baton Rouge, Louisiana, delivered approximately $246,000 in cash from the sale of illegal drugs in Plantation, Florida to the UCA to be exchanged for cryptocurrency on behalf of Co-conspirator 1.

18.     On or about October 9, 2020, defendant **RINCON**, after making cash pickups in Hartford, Connecticut and Birmingham, Alabama, delivered approximately $219,966 in cash from the sale of illegal drugs in Plantation, Florida to the UCA to be exchanged for cryptocurrency on behalf of Co-conspirator 1.

19.     On or about October 14, 2020, defendant **RINCON**, after making a cash pickup in Houston, Texas on behalf of Co-conspirator 1, was stopped in Gainesville, Florida with approximately $215,566 in cash.

20.     On or about May 20, 2021, Co-conspirator 1, at the request of defendant **DUARTE**, traveled to Broward County, Florida, and requested that the UCA build in a vehicle concealed compartments called "traps," which were strictly used to hide cash proceeds from illegal drug sales during transportation.

21.     In or around June and July 2021, Co-conspirator 2, on behalf of defendant **DUARTE** and Co-conspirator 1, supplied a vehicle (hereinafter referred to as "Vehicle 1") to the UCA for the purpose of constructing these "trap" compartments.  Law enforcement officials returned Vehicle 1 with three hidden "traps" installed.

22.     In furtherance of the money laundering conspiracy, defendant **DUARTE**, Co-conspirator 1, and Co-conspirator 2 used Vehicle 1 to pick up cash proceeds from illegal drug sales and then drive the cash to locations in the Southern District of Florida and elsewhere, where the cash was delivered to the Co-conspirator Cryptocurrency Brokers or their associates to be exchanged for cryptocurrency.

23.     On or about June 10, 2021, a box containing approximately $165,020 in cash from the sale of illegal drugs was delivered in a parking lot in Birmingham, Alabama to an undercover agent to be exchanged for cryptocurrency by the UCA on behalf of Co-conspirator 1.

24.     On or before June 10, 2021, defendant **MORALES** sent Co-conspirator 1 the address for a cryptocurrency wallet, which Co-conspirator 1 forwarded to the UCA.

25.     On or about June 10, 2021, at the direction of Co-conspirator 1, the UCA converted the cash delivered that day into cryptocurrency and transferred approximately 4.17721615 Bitcoin, which was worth approximately $153,403.60, to the wallet provided by and registered to defendant **MORALES**.

26.     On or about July 16, 2021, a box containing approximately $109,980 in cash from the sale of illegal drugs was delivered in a parking lot in Birmingham, Alabama to an undercover agent to be exchanged for cryptocurrency by the UCA on behalf of Co-conspirator 1.

27.     On or before July 16, 2021, defendant **HUTER** sent Co-conspirator 1 the address for a cryptocurrency wallet, which Co-conspirator 1 forwarded to the UCA.

28.     On or about July 16, 2021, at the direction of Co-conspirator 1, the UCA converted the cash delivered that day into cryptocurrency and transferred approximately 3.20629491 Bitcoin, which was worth approximately $102,433.99, to the wallet provided by and registered to defendant **HUTER**.

29.     On or about August 10, 2021, defendant **ALVAREZ** delivered a duffel bag containing approximately $200,000 in cash from the sale of illegal drugs in a parking lot in New York City, New York to an undercover agent to be exchanged for cryptocurrency by the UCA on behalf of Co-conspirator 1.

30.     On or before August 10, 2021, defendant **CALVO BUENO** sent Co-conspirator 1 the address for a cryptocurrency wallet, which Co-conspirator 1 forwarded to the UCA.

31.     On or about August 10, 2021, at the direction of Co-conspirator 1, the UCA converted the cash delivered that day by defendant **ALVAREZ** into cryptocurrency and transferred

approximately 4.19680327 Bitcoin, which was worth approximately $191,035.52, to the wallet provided by and registered to defendant **CALVO BUENO**.

32.   On or about September 27, 2021, Co-conspirator 2 met defendant **SAMPER** and another co-conspirator in a parking lot in Miami, Florida, and delivered a box from Vehicle 1 containing cash from the sale of illegal drugs to defendant **SAMPER**.

33.   On or before September 27, 2021, defendant **DUARTE** caused to be sent to Co-conspirator 2 the address for a cryptocurrency wallet.  Shortly after delivering the box of U.S. currency to defendant **SAMPER**, Co-conspirator 2 received a text confirmation that cryptocurrency had been sent to the wallet address as directed by defendant **DUARTE**.

34.   After September 27, 2021, Co-conspirator 2 and defendant **SAMPER** met on other occasions wherein Co-conspirator 2 delivered cash proceeds from illegal drug sales to defendant **SAMPER** to be exchanged into cryptocurrency.

35.   On or about February 9, 2022, defendant **ALVAREZ** delivered a bag containing approximately $96,980 in cash from the sale of illegal drugs in a parking lot in Plantation, Florida to the UCA to be exchanged for cryptocurrency on behalf of Co-conspirator 1.

36.   On or before February 9, 2022, defendant **LANDEROS** sent Co-conspirator 1 the address for a cryptocurrency wallet, which Co-conspirator 1 forwarded to the UCA.

37.   On or about February 9, 2022, at the direction of Co-conspirator 1, the UCA converted the cash delivered by defendant **ALVAREZ** that day into cryptocurrency and transferred approximately 94,556 USDT (Tether), which was worth approximately $94,630.83, to the wallet provided by defendant **LANDEROS** and registered to her relative.

38.     On or about February 25, 2022, a bag containing approximately $103,370 in cash from the sale of illegal drugs was delivered in a parking lot in Chicago, Illinois to an undercover agent to be exchanged for cryptocurrency by the UCA on behalf of Co-conspirator 1.

39.     On or about February 25, 2022, after the cash was converted to cryptocurrency, cryptocurrency was sent to a wallet registered to the relative of defendant **LANDEROS**, which is the same wallet address that the defendant **LANDEROS** had previously provided to Co-conspirator 1.

40.     On or about March 12, 2022, Co-conspirator 2 delivered a box containing approximately $93,166 in cash from the sale of illegal drugs in a parking lot in Pembroke Pines, Florida to the UCA to be exchanged for cryptocurrency.  Co-conspirator 2 provided the UCA with a wallet address to send the cryptocurrency.

41.     On or about March 12, 2022, defendant **DUARTE**, his relative, and Co-conspirator 2 met with the UCA in Pembroke Pines, Florida, and discussed money laundering strategies, including locations where the UCA could assist defendant **DUARTE** in his money laundering operation.

42.     On or about March 24, 2022, while driving Vehicle 1 in Broward County, Florida, defendant **DUARTE** and his relative were stopped by law enforcement.  Law enforcement found a total of approximately $451,130 in cash from the sale of illegal drugs throughout Vehicle 1, hidden in seats, in a "trap" compartment, in the center console, in the spare tire well, and in various bags and boxes.

43.     On or about June 5, 2022, defendant **ALVAREZ** parked next to the UCA's vehicle in a parking lot in Plantation, Florida.  Defendant **ALVAREZ** delivered a box containing

approximately $194,040 in cash from the sale of illegal drugs to the UCA to be exchanged for cryptocurrency on behalf of Co-conspirator 1.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT 2
### Laundering of Monetary Instruments
### (18 U.S.C. § 1956(a)(1)(B)(i))

1.      Paragraphs 1 through 26 of the General Allegations and paragraphs 1 through 43 of Count 1 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.      On or about March 24, 2022, in Broward County, in the Southern District of Florida and elsewhere, the defendant,

**NILSON SNEYDER VASQUEZ DUARTE,**
**a/k/a, "Sobri," a/k/a, "Sobrino,"**

knowingly conducted, and attempted to conduct, and aided and abetted conducting and attempting to conduct financial transactions, affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, and knowing that the money and property involved in the transactions were the proceeds of some kind of unlawful activity, and knowing that the transactions was designed, in whole and in part, to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds, by transporting a total of approximately $451,130 for the cash to be exchanged into cryptocurrency.

3.      It is further alleged that the specified unlawful activity referred to above includes:

(a)      possession with the intent to distribute controlled substances and conspiracy to do so, in violation of Title 21, United States Code, Sections 841 and 846;

(b)      unlawful importation of controlled substances into the United States and conspiracy to do so, in violation of Title 21, United States Code, Sections 952 and 963; and

(c)      operation of an unlicensed money transmitting business, in violation of Title 18, United States Code, Section 1960.

In violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

## COUNTS 3-11
### Engaging in Monetary Transactions in Criminally Derived Property
### (18 U.S.C. § 1957)

1.      Paragraphs 1 through 26 of the General Allegations and paragraphs 1 through 43 of Count 1 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.      On or about the dates set forth in each count below, in Miami-Dade and Broward Counties, in the Southern District of Florida and elsewhere, the defendants,

**MARIA EUGENIA LANDEROS ROSAS,**
**a/k/a, "Yeni,"**
**RAIMUNDO CARLOS RODRIGUEZ HUTER,**
**JUAN CARLOS RIANO MUENTES,**
**JESUS IVAN RINCON MARTINEZ,**
**MAYCCOL HEJEILE MORALES,**
**HERNAN JULIAN CALVO BUENO, and**
**SERGIO FERNANDO VARGAS ALVAREZ,**

knowingly engaged in, and attempted to engage in, and aided and abetted engaging in and attempting to engage in monetary transactions in and affecting interstate and foreign commerce, by, through, and to a financial institution, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, and knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, as more particularly described in each count below:

| Count(s) | Defendant(s) | Date (approximate) | Description of Transaction |
|---|---|---|---|
| 3 | **JUAN CARLOS RIANO MUENTES** | September 9, 2020 | Exchange of approximately $51,500 in cash into cryptocurrency in the Southern District of Florida. |
| 4 | **JESUS IVAN RINCON MARTINEZ** | September 25, 2020 | Exchange of approximately $246,000 in cash into cryptocurrency in the Southern District of Florida. |
| 5 | **JESUS IVAN RINCON MARTINEZ** | October 9, 2020 | Exchange of approximately $219,966 in cash into cryptocurrency in the Southern District of Florida. |
| 6 | **MAYCCOL HEJEILE MORALES** | June 10, 2021 | Transfer of approximately 4.17721615 Bitcoin, which was worth approximately $153,403.60, from the Southern District of Florida to a wallet controlled by defendant **MORALES**. |
| 7 | **RAIMUNDO CARLOS RODRIGUEZ HUTER** | July 16, 2021 | Transfer of approximately 3.20629491 Bitcoin, which was worth approximately $102,433.99, from the Southern District of Florida to a wallet controlled by defendant **HUTER**. |
| 8 | **HERNAN JULIAN CALVO BUENO** | August 10, 2021 | Transfer of approximately 4.19680327 Bitcoin, which was worth approximately $191,035.52, from the Southern District of Florida to a wallet controlled by defendant **CALVO BUENO**. |
| 9 | **SERGIO FERNANDO VARGAS ALVAREZ** | February 9, 2022 | Exchange of approximately $96,980 in cash into cryptocurrency in the Southern District of Florida. |

| Count(s) | Defendant(s) | Date (approximate) | Description of Transaction |
|---|---|---|---|
| 10 | **MARIA EUGENIA LANDEROS ROSAS** | February 9, 2022 | Transfer of approximately 94,556 USDT (Tether), which was worth approximately $94,630.83, from the Southern District of Florida to a wallet controlled by defendant **LANDEROS**. |
| 11 | **SERGIO FERNANDO VARGAS ALVAREZ** | June 5, 2022 | Exchange of approximately $194,040 in cash into cryptocurrency in the Southern District of Florida. |

3.      It is further alleged that the specified unlawful activity referred to above includes:

(a)      possession with the intent to distribute controlled substances and conspiracy to do so, in violation of Title 21, United States Code, Sections 841 and 846;

(b)      unlawful importation of controlled substances into the United States and conspiracy to do so, in violation of Title 21, United States Code, Sections 952 and 963; and

(c)      operation of an unlicensed money transmitting business, in violation of Title 18, United States Code, Section 1960.

In violation of Title 18, United States Code, Sections 1957 and 2.

## COUNT 12
## Operation of Unlicensed Money Transmitting Business
## (18 U.S.C. § 1960)

1.      Paragraphs 1 through 26 of the General Allegations and paragraphs 1 through 43 of Count 1 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.      From on or about January 19, 2021, through on about January 29, 2022, in Miami-Dade and Broward Counties, in the Southern District of Florida and elsewhere, the defendant,

**HERNAN JULIAN CALVO BUENO,**

did knowingly conduct, control, manage, supervise, direct, and own all or part of an unlicensed money transmitting business affecting interstate and foreign commerce, which was operated without an appropriate money transmitting license in a State, that is, Florida, where such operation was punishable as a felony under State law, in violation of Title 18, United States Code, Sections 1960(a) and (b)(1)(A) and 2.

**COUNT 13**
**Operation of Unlicensed Money Transmitting Business**
**(18 U.S.C. § 1960)**

1.      Paragraphs 1 through 26 of the General Allegations and paragraphs 1 through 43 of Count 1 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.      From on or about April 27, 2021, to on or about March 17, 2022, in Miami-Dade and Broward Counties, in the Southern District of Florida and elsewhere, the defendant,

**RAIMUNDO CARLOS RODRIGUEZ HUTER,**

did knowingly conduct, control, manage, supervise, direct, and own all or part of an unlicensed money transmitting business affecting interstate and foreign commerce, which was operated without an appropriate money transmitting license in a State, that is, Florida, where such operation was punishable as a felony under State law, in violation of Title 18, United States Code, Sections 1960(a) and (b)(1)(A) and 2.

## COUNT 14
### Operation of Unlicensed Money Transmitting Business
### (18 U.S.C. § 1960)

1.      Paragraphs 1 through 26 of the General Allegations and paragraphs 1 through 43 of Count 1 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.      From on or about September 20, 2020, through at least on or about December 5, 2022, in Miami-Dade and Broward Counties, in the Southern District of Florida and elsewhere, the defendant,

**MARIA EUGENIA LANDEROS ROSAS,**
**a/k/a, "Yeni,"**

did knowingly conduct, control, manage, supervise, direct, and own all or part of an unlicensed money transmitting business affecting interstate and foreign commerce, which was operated without an appropriate money transmitting license in a State, that is, Florida, where such operation was punishable as a felony under State law, in violation of Title 18, United States Code, Sections 1960(a) and (b)(1)(A) and 2.

## COUNT 15
### Operation of Unlicensed Money Transmitting Business
### (18 U.S.C. § 1960)

1.      Paragraphs 1 through 26 of the General Allegations and paragraphs 1 through 43 of Count 1 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.      From on or about August 28, 2020, through at least on or about July 9, 2021, in Miami-Dade and Broward Counties, in the Southern District of Florida and elsewhere, the defendant,

**MAYCCOL HEJEILE MORALES,**

did knowingly conduct, control, manage, supervise, direct, and own all or part of an unlicensed money transmitting business affecting interstate and foreign commerce, which was operated without an appropriate money transmitting license in a State, that is, Florida, where such operation was punishable as a felony under State law, in violation of Title 18, United States Code, Sections 1960(a) and (b)(1)(A) and 2.

## COUNT 16
**Operation of Unlicensed Money Transmitting Business**
**(18 U.S.C. § 1960)**

1.      Paragraphs 1 through 26 of the General Allegations and paragraphs 1 through 43 of Count 1 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.      From on or about January 25, 2022, through at least on or about March 24, 2022, in Miami-Dade and Broward Counties, in the Southern District of Florida and elsewhere, the defendant,

**NILSON SNEYDER VASQUEZ DUARTE,**
**a/k/a "Sobri," a/k/a "Sobrino,"**

did knowingly conduct, control, manage, supervise, direct, and own all or part of an unlicensed money transmitting business affecting interstate and foreign commerce, which was operated without an appropriate money transmitting license in a State, that is, Florida, where such operation was punishable as a felony under State law, in violation of Title 18, United States Code, Sections 1960(a) and (b)(1)(A) and 2.

## COUNT 17
**Operation of Unlicensed Money Transmitting Business**
**(18 U.S.C. § 1960)**

1.       Paragraphs 1 through 26 of the General Allegations and paragraphs 1 through 43 of Count 1 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.       From in or around January 2020, through at least on or about September 8, 2020, in Miami-Dade and Broward Counties, in the Southern District of Florida and elsewhere, the defendant,

**JUAN CARLOS RIANO MUENTES**

did knowingly conduct, control, manage, supervise, direct, and own all or part of an unlicensed money transmitting business affecting interstate and foreign commerce, which was operated without an appropriate money transmitting license in a State, that is, Florida, where such operation was punishable as a felony under State law, in violation of Title 18, United States Code, Sections 1960(a) and (b)(1)(A) and 2.

## COUNT 18
**Operation of Unlicensed Money Transmitting Business**
**(18 U.S.C. § 1960)**

1.       Paragraphs 1 through 26 of the General Allegations and paragraphs 1 through 43 of Count 1 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.       From on or about September 21, 2020, through at least on or about October 5, 2020, in Miami-Dade and Broward Counties, in the Southern District of Florida and elsewhere, the defendant,

23

**JESUS IVAN RINCON MARTINEZ,**

did knowingly conduct, control, manage, supervise, direct, and own all or part of an unlicensed money transmitting business affecting interstate and foreign commerce, which was operated without an appropriate money transmitting license in a State, that is, Florida, where such operation was punishable as a felony under State law, in violation of Title 18, United States Code, Sections 1960(a) and (b)(1)(A) and 2.

**COUNT 19**
**Operation of Unlicensed Money Transmitting Business**
**(18 U.S.C. § 1960)**

1.      Paragraphs 1 through 26 of the General Allegations and paragraphs 1 through 43 of Count 1 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.      From on or about August 9, 2021, through at least on or about June 3, 2022, in Miami-Dade and Broward Counties, in the Southern District of Florida and elsewhere, the defendant,

**SERGIO FERNANDEZ VARGAS ALVAREZ,**

did knowingly conduct, control, manage, supervise, direct, and own all or part of an unlicensed money transmitting business affecting interstate and foreign commerce, which was operated without an appropriate money transmitting license in a State, that is, Florida, where such operation was punishable as a felony under State law, in violation of Title 18, United States Code, Sections 1960(a) and (b)(1)(A) and 2.

## COUNT 20
## Operation of Unlicensed Money Transmitting Business
## (18 U.S.C. § 1960)

1.      Paragraphs 1 through 26 of the General Allegations and paragraphs 1 through 43 of Count 1 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.      From on or about September 27, 2021, through at least on or about January 10, 2022, in Miami-Dade and Broward Counties, in the Southern District of Florida and elsewhere, the defendant,

**HERNAN HORACIO RICHARD SAMPER,**

did knowingly conduct, control, manage, supervise, direct, and own all or part of an unlicensed money transmitting business affecting interstate and foreign commerce, which was operated without an appropriate money transmitting license in a State, that is, Florida, where such operation was punishable as a felony under State law, in violation of Title 18, United States Code, Sections 1960(a) and (b)(1)(A) and 2.

## FORFEITURE ALLEGATIONS

1.      The allegations of this Indictment are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which any of the defendants, **NILSON SNEYDER VASQUEZ DUARTE, a/k/a, "Sobri," a/k/a, "Sobrino," MARIA EUGENIA LANDEROS ROSAS, a/k/a, "Yeni," RAIMUNDO CARLOS RODRIGUEZ HUTER, JUAN CARLOS RIANO MUENTES, JESUS IVAN RINCON MARTINEZ, MAYCCOL HEJEILE MORALES, HERNAN JULIAN CALVO BUENO, SERGIO FERNANDO VARGAS ALVAREZ, and HERNAN SAMPER**, have an interest.

2.      Upon conviction of a violation of Title 18, United States Code, Sections 1956, 1957 and/or 1960, as alleged in this Indictment, the defendant shall forfeit to the United States any property, real or personal, involved in such offense, and any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1).

3.      If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

a.      cannot be located upon the exercise of due diligence;

b.      has been transferred or sold to, or deposited with, a third party;

c.      has been placed beyond the jurisdiction of the court;

d.      has been substantially diminished in value; or

e.      has been commingled with other property which cannot be divided without difficulty,

then the United States shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1).

All pursuant to Title 18, United States Code, Section 982(a)(1), and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

FOREPERSON

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

MICHAEL N. BERGER
ASSISTANT UNITED STATES ATTORNEY

NALINA SOMBUNTHAM
ASSISTANT UNITED STATES ATTORNEY

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**UNITED STATES OF AMERICA**

**CASE NO.:** 24-CR-20367-BB(s)

**v.**

NILSON SNEYDER VASQUEZ DUARTE,
a/k/a, "SOBRI," a/k/a, "SOBRINO," et al,

**CERTIFICATE OF TRIAL ATTORNEY**

_____/
Defendants.

**Superseding Case Information:**
New Defendant(s) (Yes or No) No
Number of New Defendants _____
Total number of new counts __5__

**Court Division** (select one)
☒ Miami   ☐ Key West   ☐ FTP
☐ FTL   ☐ WPB

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. §3161.

3. Interpreter: (Yes or No) Yes
   List language and/or dialect: Spanish

4. This case will take __12__ days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)              (Check only one)
   I    ☐ 0 to  5 days          ☐ Petty
   II   ☐ 6 to 10 days          ☐ Minor
   III  ☒ 11 to 20 days         ☐ Misdemeanor
   IV   ☐ 21 to 60 days         ☒ Felony
   V    ☐ 61 days and over

6. Has this case been previously filed in this District Court? (Yes or No) Yes
   If yes, Judge Bloom _____ Case No. _____

7. Has a complaint been filed in this matter? (Yes or No) No
   If yes, Magistrate Case No. _____

8. Does this case relate to a previously filed matter in this District Court? (Yes or No) Yes
   If yes, Judge Singhal _____ Case No. 24-60139-CR-SINGHAL; see attached.

9. Defendant(s) in federal custody as of _____

10. Defendant(s) in state custody as of _____

11. Rule 20 from the _____ District of _____

12. Is this a potential death penalty case? (Yes or No) No

13. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) No

14. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss? (Yes or No) No

15. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No

16. Did this matter involve the participation of or consultation with now Magistrate Judge Marta Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? No

By: _____
Michael N. Berger
Assistant United States Attorney
Court ID No.      A5501557

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name**: **NILSON SNEYDER VASQUEZ DUARTE**

**Case No**: 24-CR-20367-BB(s)

Count #1:

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)
* **Max. Term of Imprisonment:** Twenty (20) Years imprisonment
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** Three (3) Years
* **Max. Fine:** Greater of $500,000 or twice the value of the property involved

Count #2:

Laundering of Monetary Instruments

Title 18, United States Code, Section 1956(a)(1)(B)(i)
* **Max. Term of Imprisonment:** Twenty (20) Years imprisonment
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** Three (3) Years
* **Max. Fine:** Greater of $500,000 or twice the value of the property involved

Count #16:

Operation of Unlicensed Money Transmitting Business

Title 18, United States Code, Section 1960
* **Max. Term of Imprisonment:** Five (5) Years Imprisonment
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** Three (3) Years
* **Max. Fine:** $250,000 or not more than twice the amount criminally derived property involved

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include
restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name**: **MARIA EUGENIA LANDEROS ROSAS**

**Case No**: 24-CR-20367-BB(s)

Count #1:

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)
* **Max. Term of Imprisonment:** Twenty (20) Years imprisonment
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** Three (3) Years
* **Max. Fine:** $500,000 or twice the value of the property involved

Count #10:

Engaging in Monetary Transactions in Criminally Deprived Property

Title 18, United States Code, Section 1957
* **Max. Term of Imprisonment:** Ten (10) Years imprisonment as to each count
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** Three (3) Years
* **Max. Fine:** $250,000 or not more than twice the amount of criminally derived property involved

Count #14:

Operation of Unlicensed Money Transmitting Business

Title 18, United States Code, Section 1960
* **Max. Term of Imprisonment:** Five (5) Years Imprisonment
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** Three (3) Years
* **Max. Fine:** $250,000 or not more than twice the amount criminally derived property involved

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: **RAIMUNDO CARLOS RODRIGUEZ HUTER**

**Case No**: 24-CR-20367-BB(s)

Count #1:

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)
* **Max. Term of Imprisonment:** Twenty (20) Years imprisonment
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** Three (3) Years
* **Max. Fine:** Greater of $500,000 or twice the value of the property involved

Count #7:

Engaging in Monetary Transactions in Criminally Deprived Property

Title 18, United States Code, Section 1957
* **Max. Term of Imprisonment:** Ten (10) Years imprisonment as to each count
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** Three (3) Years
* **Max. Fine:** $250,000 or not more than twice the amount of criminally derived property involved

Count #13:

Operation of Unlicensed Money Transmitting Business

Title 18, United States Code, Section 1960
* **Max. Term of Imprisonment:** Ten (10) Years Imprisonment
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** Three (3) Years
* **Max. Fine:** $250,000 or not more than twice the amount criminally derived property involved

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**: **JUAN CARLOS RIANO MUENTES**

**Case No**: 24-CR-20367-BB(s)

Count #1:

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)
* **Max. Term of Imprisonment:** Twenty (20) Years imprisonment
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** Three (3) Years
* **Max. Fine:** Greater of $500,000 or twice the value of the property involved

Count #3:

Engaging in Monetary Transactions in Criminally Deprived Property

Title 18, United States Code, Section 1957
* **Max. Term of Imprisonment:** Ten (10) Years imprisonment as to each count
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** Three (3) Years
* **Max. Fine:** $250,000 or not more than twice the amount of criminally derived property involved

Count #17:

Operation of Unlicensed Money Transmitting Business

Title 18, United States Code, Section 1960
* **Max. Term of Imprisonment:** Five (5) Years Imprisonment
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** Three (3) Years
* **Max. Fine:** $250,000 or not more than twice the amount criminally derived property involved

*Refers only to possible term of incarceration, supervised release and fines.  It does not include
restitution, special assessments, parole terms, or forfeitures that may be applicable.

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**: **JESUS IVAN RINCON MARTINEZ**

**Case No**: 24-CR-20367-BB(s)

Count #1:

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)
* **Max. Term of Imprisonment:** Twenty (20) Years imprisonment
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** Three (3) Years
* **Max. Fine:** Greater of $500,000 or twice the value of the property involved

Count #4:

Engaging in Monetary Transactions in Criminally Deprived Property

Title 18, United States Code, Section 1957
* **Max. Term of Imprisonment:** Ten (10) Years imprisonment as to each count
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** Three (3) Years
* **Max. Fine:** $250,000 or not more than twice the amount of criminally derived property involved

Count #5:

Engaging in Monetary Transactions in Criminally Deprived Property

Title 18, United States Code, Section 1957
* **Max. Term of Imprisonment:** Ten (10) Years imprisonment as to each count
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** Three (3) Years
* **Max. Fine:** $250,000 or not more than twice the amount of criminally derived property involved

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include
restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**PENALTY SHEET**

(Page 2)

**Defendant's Name: JESUS IVAN RINCON MARTINEZ**

**Case No: 24-CR-20367-BB(s)**

Count #18:

Operation of Unlicensed Money Transmitting Business

Title 18, United States Code, Section 1960
* **Max. Term of Imprisonment:** Five (5) Years Imprisonment
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** Three (3) Years
* **Max. Fine:** $250,000 or not more than twice the amount criminally derived property involved

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name**: **MAYCCOL HEJEILE MORALES**

**Case No**: 24-CR-20367-BB(s)

Count #1:

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)
* **Max. Term of Imprisonment:** Twenty (20) Years imprisonment
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** Three (3) Years
* **Max. Fine:** Greater of $500,000 or twice the value of the property involved

Count #6:

Engaging in Monetary Transactions in Criminally Deprived Property

Title 18, United States Code, Section 1957
* **Max. Term of Imprisonment:** Ten (10) Years imprisonment as to each count
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** Three (3) Years
* **Max. Fine:** $250,000 or not more than twice the amount of criminally derived property involved

Count #15:

Operation of Unlicensed Money Transmitting Business

Title 18, United States Code, Section 1960
* **Max. Term of Imprisonment:** Five (5) Years Imprisonment
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** Three (3) Years
* **Max. Fine:** $250,000 or not more than twice the amount criminally derived property involved

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

`UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: HERNAN JULIAN CALVO BUENO

**Case No**: 24-CR-20367-BB(s)

Count #1:

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)
* **Max. Term of Imprisonment:** Twenty (20) Years imprisonment
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** Three (3) Years
* **Max. Fine:** Greater of $500,000 or twice the value of the property involved

Count #8:

Engaging in Monetary Transactions in Criminally Deprived Property

Title 18, United States Code, Section 1957
* **Max. Term of Imprisonment:** Ten (10) Years imprisonment
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** Three (3) Years
* **Max. Fine:** $250,000 or not more than twice the amount of criminally derived property involved

Count #12:

Operation of Unlicensed Money Transmitting Business

Title 18, United States Code, Section 1960
* **Max. Term of Imprisonment:** Five (5) Years imprisonment as to each count
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** Three (3) Years
* **Max. Fine:** $250,000 or not more than twice the amount criminally derived property involved

**\*Refers only to possible term of incarceration, supervised release and fines.  It does not include
restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: **SERGIO FERNANDO VARGAS ALVAREZ** _____

**Case No**: 24-CR-20367-BB(s) _____

Count #1:

Conspiracy to Commit Money Laundering _____

Title 18, United States Code, Section 1956(h) _____
* **Max. Term of Imprisonment:** Twenty (20) Years imprisonment
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** Three (3) Years
* **Max. Fine:** Greater of $500,000 or twice the value of the property involved

Count #9:

Engaging in Monetary Transactions in Criminally Deprived Property _____

Title 18, United States Code, Section 1957 _____
* **Max. Term of Imprisonment:** Ten (10) Years imprisonment as to each count
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** Three (3) Years
* **Max. Fine:** $250,000 or not more than twice the amount of criminally derived property involved

Count #11:

Engaging in Monetary Transactions in Criminally Deprived Property _____

Title 18, United States Code, Section 1957 _____
* **Max. Term of Imprisonment:** Ten (10) Years imprisonment as to each count
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** Three (3) Years
* **Max. Fine:** $250,000 or not more than twice the amount criminally derived property involved

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

(Page 2)

**Defendant's Name**: **SERGIO FERNANDO VARGAS ALVAREZ**

**Case No**: 24-CR-20367-BB(s)

Count #19:

Operation of Unlicensed Money Transmitting Business

Title 18, United States Code, Section 1960
* **Max. Term of Imprisonment:** Five (5) Years imprisonment as to each count
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** Three (3) Years
* **Max. Fine:** $250,000 or not more than twice the amount criminally derived property involved

*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**: **HERNAN HORACIO RICHARD SAMPER**

**Case No**: 24-CR-20367-BB(s)

Count #1:

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)
* **Max. Term of Imprisonment:** Twenty (20) Years imprisonment
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** Three (3) Years
* **Max. Fine:** Greater of $500,000 or twice the value of the property involved

Count #20:

Operation of Unlicensed Money Transmitting Business

Title 18, United States Code, Section 1960
* **Max. Term of Imprisonment:** Five (5) Years imprisonment as to each count
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** Three (3) Years
* **Max. Fine:** $250,000 or not more than twice the amount criminally derived property involved

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**